**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

EFREN PAREDES, JR.,

      Petitioner,                  Case No. 03-74826-DT

v.                            HONORABLE GERALD E. ROSEN
                                UNITED STATES DISTRICT JUDGE

DOUGLAS VASBINDER,

      Respondent.

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

      Efren Paredes, Jr.,("petitioner"), presently confined at the Cotton Correctional

Facility in Jackson, Michigan, seeks the issuance of a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  In his application, filed by attorney Stuart G. Friedman, petitioner

challenges his conviction for first-degree murder, M.C.L.A. 750.316; and armed robbery,

M.C.L.A. 750.529.  For the reasons stated below, the petition for a writ of habeas

corpus is **DENIED.**

### I.  Background

      Petitioner was convicted of the above offenses following a jury trial in the Berrien

County Circuit Court.  Petitioner's convictions arose from the murder of Richard Tetzlaff

on March 8, 1989, during a robbery of Vineland Foodland, a supermarket in St. Joseph

Township, Michigan.  Petitioner was fifteen years old at the time of the murder and

robbery, and worked as a bagger at the store.

      Petitioner previously filed a habeas petition with the United States District Court

for the Western District of Michigan, which was dismissed on the ground that petitioner

had failed to exhaust his state court remedies. *See Paredes v. Johnson,* No. 1:95-CV-

1

112 (W.D. Mich. October 19, 1998)(Bell, J.); *aff'd* 230 F. 3d 1359 (Table); 2000 WL

1206544 (6th Cir. August 18, 2000); *cert. den.* 531 U.S. 1116 (2001).  Respondent has

attached to her answer the Report and Recommendation issued on December 12, 1997

by Magistrate Judge Joseph G. Scoville in this prior case, which contains a lengthy and

thorough summary of the facts. [1]  The Court will adopt the magistrate's factual findings,

insofar as they are not clearly erroneous and were adopted by Judge Bell in the prior

habeas case, which in turn, was affirmed by both the Sixth Circuit and the United States

Supreme Court. *Cf. United States ex. rel. Gonzalez v. Zelker,* 477 F. 2d 797, 800 (2nd

Cir. 1973)(normally findings of magistrate adopted by district court are to stand on

appellate review unless clearly erroneous).  However, to provide a brief summary of the

case for this opinion, this Court will recite verbatim the relevant facts regarding

petitioner's conviction from the Michigan Court of Appeals' opinion affirming his

conviction, which are presumed correct on habeas review. *See Monroe v. Smith,* 197 F.

Supp. 2d 753, 758 (E.D. Mich. 2001):

> The evidence presented at trial indicated that defendant had stated that he
> was going to rob the store and kill somebody.  On March 8, 1989, when
> defendant was picked up at the store by Alex Mui, defendant stated "I did it."
> Mui testified that he knew that this meant that defendant had killed
> somebody.  Defendant told Mui that he had to go back into the store to get
> the money.  Subsequently, a bag of money was found in the basement of
> defendant's house.  Defendant's fingerprints were found on a cash drawer
> which he should not have had access to.  The day after the crime, defendant
> was seen with a set of keys which were similar to the victim's set of keys,
> which were missing.

> *People v. Paredes,* No.128928, * 5 (Mich.Ct.App. June 8, 1992).

> Petitioner's conviction was affirmed on appeal. *Id., reh. den.* 128928 (Mich.Ct.App.

---

[1]  *See* This Court's Dkt. Entry # 31.

August 13, 1992); *lv. den.* 442 Mich. 904; 503 N.W. 2d 443 (1993); *reconsideration den.* 442 Mich. 904; 505 N.W. 2d 585 (1993).

After petitioner's first habeas petition was dismissed without prejudice, petitioner filed a post-conviction motion for relief from judgment with the trial court, which was denied. *People v. Paredes,* No. 89-1127-FC-Z (Berrien County Circuit Court, September 11, 2001). The Michigan appellate courts denied petitioner's applications for leave to appeal. *People v. Paredes,* No. 243668 (Mich.Ct.App. December 27, 2002); *lv. den.* 468 Mich. 917; 662 N.W. 2d 754 (2003); *reconsideration den.,* 468 Mich. 917; 670 N.W. 2d 672 (2003).

Petitioner now seeks habeas relief. For the purposes of judicial clarity and economy, the Court will paraphrase the substantive claims rather than recite them verbatim. [2]

 I.  Petitioner was denied the effective assistance of counsel.

 II.  Petitioner was denied a fair trial because of prosecutorial misconduct.

 III.  Petitioner was denied a fair and impartial jury because of pretrial publicity.

 IV.  There was insufficient evidence to prove petitioner guilty of the crimes beyond a reasonable doubt.

 V. The cumulative effect of these errors denied petitioner due process of law.

## II.  Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect

---

[2]  The Court will also re-number them for clarity, because petitioner's first "claim", namely, that his claims are properly before this Court, is not actually a substantive claim for relief.

3

to any claim that was adjudicated on the merits in State court proceedings
unless the adjudication of the claim–

> (1)    resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly
> established Federal law, as determined by the Supreme
> Court of the United States; or
> (2)    resulted in a decision that was based on an
> unreasonable determination of the facts in light of the
> evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the

state court arrives at a conclusion opposite to that reached by the Supreme Court on a

question of law or if the state court decides a case differently than the Supreme Court

has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000).  An "unreasonable application" occurs when "a state court decision

unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case."

*Id.* at 409.  A federal habeas court may not "issue the writ simply because that court

concludes in its independent judgment that the relevant state-court decision applied

clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

### Claim # 1.  Petitioner was not deprived of the effective assistance of counsel..

Petitioner first contends that he was deprived of the effective assistance of trial

and appellate counsel. [3]

---

[3]   Respondent contends that the majority of petitioner's ineffective assistance of trial counsel
claims are procedurally defaulted.  Although the issue of whether a claim is procedurally barred should
ordinarily be resolved first, "judicial economy sometimes dictates reaching the merits [of a claim or claims]
if the merits are easily resolvable against a petitioner while the procedural bar issues are complicated."
*Barrett v. Acevedo,* 169 F. 3d 1155, 1162 (8th Cir. 1999).  Petitioner has raised a number of arguments in
which he contends that the claims are not defaulted or that any default should be excused.  Because "the
procedural default issue raises more questions than the case on the merits", this Court will assume, for the
sake of resolving the claims, that there is no procedural default by petitioner and will decide the merits of
the claims. *Falkiewicz v. Grayson,* 271 F. Supp. 2d 942, 948 (E.D. Mich. 2003).

4

A.  *Standard of Review*

To prevail on his ineffective assistance of counsel claims, petitioner must show

that the state court's conclusion regarding these claims was contrary to, or an

unreasonable application of, *Strickland v. Washington*, 466 U.S. 668 (1984). *See*

*Cathron v. Jones,* 190 F. Supp. 2d 990, 996 (E.D. Mich. 2002).  *Strickland* established

a two-prong test for claims of ineffective assistance of counsel: the petitioner must

show (1) that counsel's performance was deficient, and (2) that the deficient

performance prejudiced the defense. *Strickland,* 466 U.S. at 687.

B.  *The individual claims.*

Petitioner has raised a number of different ineffective assistance of trial counsel

claims.  Many of these claims are repetitive or overlapping.  In the interests of judicial

clarity, the Court will consolidate some of these claims to the extent that they overlap.

1.  Failure to use that the gunshot residue and trace evidence to impeach Alex
Mui's testimony.

Petitioner first claims that counsel was ineffective for arguing that the gunshot

residue and trace evidence in this case would have contradicted Alex Mui's testimony

that petitioner had indicated that he had fired the first shot at the victim during the

ambush and had missed.  Petitioner contends that if petitioner had ambushed the

victim, as Mui had described, he would not have been firing at his legs and would not

have missed from a distance of less than two feet, as the ballistics evidence suggests.

Petitioner also contends that this ballistics evidence is inconsistent with the alternate

prosecution theory that petitioner missed while shooting "rapid fire" into the victim while

the victim was lying on the floor.

5

Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Reedus v. Stegall,* 197 F. Supp. 2d 767, 782 (E.D. Mich. 2001). In this case, petitioner merely speculates that this ballistics evidence would have impeached Mui's testimony. It is not inconceivable that a fifteen year old adolescent could have aimed a gun at the victim's legs and missed the first shot from a close distance, due to nervousness or inexperience. Therefore, the crime scene evidence was not flatly inconsistent with Mui's testimony or the prosecution's theory of the case, so as to show that counsel was ineffective for failing to make use of the ballistics evidence. *See e.g. Steidl v. Walls,* 267 F. Supp. 2d 919, 939 (C.D. Ill. 2003). The mere possibility that the results of a ballistics test would have lead to petitioner's acquittal is insufficient to show prejudice, for purposes of establishing an ineffective assistance of counsel claim. *See e.g. Williams v. Carter,* 85 F. Supp. 2d 837, 840 (N.D. Ill. 1999). Thus, this claim is without merit.

    2. <u>Failure to adequately cross-examine the witnesses.</u>

In several of his sub-claims, petitioner contends that trial counsel was ineffective for failing to cross-examine the witnesses about various issues. In sub-claim (C), petitioner argues that counsel was ineffective for failing to cross-examine Alex Mui about his first statement to the police, in which he told the police that he and his brother were home all night on March 8, 1989. In sub-claim (D), petitioner contends that counsel should have cross-examined the various witnesses about the fact that petitioner's statements to them on March 6, 1989 as to how he planned to execute the robbery and murder were inconsistent as to how and where the robbery and murder

6

actually took place in the store.  In sub-claim (E), petitioner claims that counsel was ineffective for failing to cross-examine the petitioner's friends about the inconsistencies in their testimony concerning who was present when they picked up petitioner on March 6, 1989.  In sub-claim (F), petitioner contends that trial counsel was ineffective for failing to cross-examine Steve Miller, one of the young men who testified, about the fact that he knew that the police had a description of the suspect vehicle when he spoke to them about the case.  In sub-claim (G), petitioner claims that counsel was ineffective for failing to cross-examine petitioner's friends about conflicts in their statements to the police about how petitioner came into possession of the murder weapon.  Finally, as part of sub-claim (I), petitioner contends that counsel was ineffective for not eliciting testimony that Bryon Blurton was in the parking lot of Vineland Foods until 9:10 to 9:15 p.m. and did not see any cars in the area, including a Honda with one headlight.  Petitioner contends that this would have impeached Alex Mui's testimony that he circled the area around the store beginning at 9:00 p.m.

The failure by trial counsel to cross-examine a prosecution witness can constitute ineffective assistance of counsel. *Hence v. Smith*, 37 F. Supp. 970, 983 (E.D. Mich. 1999).  However, "[C]ourts generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *Millender v. Adams,* 187 F. Supp. 2d 852, 870 (E.D. Mich. 2002).  "Impeachment strategy is a matter of trial tactics, and tactical decisions are not ineffective assistance of counsel simply because in retrospect better tactics may have been available." *Dell v. Straub,* 194 F. Supp. 2d 629, 651 (E.D. Mich. 2002).

In the present case, defense counsel's performance did not constitute ineffective

7

assistance of counsel where the record shows that defense counsel carefully cross-examined the prosecution witnesses and in his closing argument emphasized the inconsistencies and weaknesses in the testimony of the various witnesses, as well as their possible motivations for fabricating these charges against petitioner. *See Krist v. Foltz,* 804 F. 2d 944, 948-49 (6th Cir. 1986); *Millender,* 187 F. Supp. 2d at 872.

Moreover, even if counsel was deficient in failing to cross-examine the witnesses about these various issues, petitioner has failed to demonstrate any reasonable probability that the proposed cross-examination would have affected the result of the proceeding, in light of the overwhelming evidence against him in this case. *See Moss v. Hofbauer,* 286 F. 3d 851, 866 (6th Cir. 2002).

3. Failure to present exculpatory evidence.

In sub-claim (C), petitioner alleges that counsel was ineffective for failing to present evidence that Alex and Eric Mui's mother made a statement to the police, in which she told them that she remembered her sons going out on the night of the murder.  Petitioner contends that this statement would somehow implicate Eric Mui as being involved in the murder.  As part of sub-claim (I), petitioner contends that counsel was ineffective for failing to admit a statement of petitioner to a fellow high school student that he believed that the Muis were planning on "doing some very serious things" and he therefore intended not to associate with them anymore.  As part of this sub-claim, petitioner also contends that counsel should have elicited testimony that the blue Honda in this case was owned by Eric Mui, not Alex Mui, so as to establish that Eric Mui was present at Vineland Foods on March 8, 1989.

A defense counsel has no obligation to call or even interview a witness whose

8

testimony would not have exculpated the defendant. *Millender* 187 F. Supp. 2d at 877. In this case, Ms. Mui's testimony that her sons went out on the night of the murder was actually consistent with the prosecution's case and would have done nothing to exculpate petitioner of the murder.  Likewise, the fact that Eric Mui was the owner of the blue Honda and that Alex Mui owned his own car would also have done nothing to exculpate petitioner of the murder.

The Court also rejects petitioner's claim that counsel was ineffective in failing to admit petitioner's statement to another student.  Under Michigan law, a defendant's self-serving hearsay statements are properly excluded from evidence. *People v. Compton,* 23 Mich. App. 42, 45; 178 N. W. 2d 133 (1970).  Because petitioner's out-of-court exculpatory statements were inadmissible hearsay evidence, counsel was not deficient in failing to introduce them at petitioner's trial. *Pursell v. Horn,* 187 F. Supp. 2d 260, 356-57 (W.D. Pa. 2002).

4.  <u>Failure to object to certain evidence.</u>

In sub-claim (J), petitioner contends that counsel was ineffective for failing to object to evidence concerning discussions which petitioner had with Sean Phelan, a fellow employee at Vineland Foods, about how a person's body would react if shot and how to aim a gun at a person in order to kill them.  Petitioner also claims that counsel was ineffective for failing to object to testimony by Ken Strode and Matt Stenske, who also worked at Vineland Foods, concerning a question that petitioner made to Strode about how he would react if someone attempted to rob him.  Petitioner claims that this evidence was more prejudicial than probative.

The Court notes that trial counsel in this case had objected to the introduction of

9

"rap" music lyrics which petitioner had copied, as well as several drawings made by petitioner, which made reference to killings, on the ground that such evidence was inflammatory.  The trial court had ruled that such evidence was admissible as being probative of petitioner's premeditation and deliberation as it showed his interest in death and killing.  The Michigan Court of Appeals upheld this ruling on petitioner's appeal. *People v. Paredes,* Slip. Op. at * 4.

In light of the fact that the prosecution was allowed to present evidence which showed that petitioner had an interest in killing, it is merely speculative to conclude that the trial court would have excluded the testimony of petitioner's co-workers pursuant to M.R.E. 403 had such an objection been made.  However, speculation as to what a trial court would have done if presented with a motion to exclude evidence as being more prejudicial than probative "[i]s not equivalent to a showing of prejudice sufficient to undermine confidence in the outcome of the trial." *Garrett v. United States,* 78 F. 3d 1296, 1302 (8th Cir. 1996).  Moreover, because of the overwhelming evidence in this case, petitioner was not prejudiced by counsel's failure to object to the admission of this evidence on the ground that it was more prejudicial than probative. *Id.*

Petitioner further claims that counsel was ineffective for failing to object to testimony that baggers never went into the manager's office at Vineland Foods or handled the cash registers, contending that the prosecution failed to establish a foundation pursuant to M.R.E. 406 that this was an established habit or routine practice at Vineland Foods.

Petitioner's ineffective assistance of counsel claim fails because he has failed to show that a proper foundation for the admission of this evidence pursuant to M.R.E.

10

406 was not, or could not have been, made. *See Bramblett v. True,* 59 Fed. Appx. 1, 10 (4th Cir. 2003).

5. <u>Deficient closing argument</u>.

Petitioner next contends that trial counsel's closing argument was defective.

While the right to effective assistance of counsel extends to closing arguments, counsel nonetheless has wide latitude in deciding how best to represent a criminal defendant, and deference to a defense counsel's decisions in his closing argument is particularly important because of the broad range of legitimate defense strategies at that stage. *Yarborough v. Gentry,* 540 U.S. 1, 5-6 (2003).  Judicial review of a defense attorney's summation must therefore be highly deferential and is "doubly deferential when it is conducted through the lense of federal habeas." *Id.*

In the present case, petitioner's counsel made an extensive closing argument, in which he pointed out various inconsistencies and weaknesses in the prosecution's case, as well as the motives for the various witnesses to testify against petitioner. (Tr. VII, pp. 1190-1207).  The additional points that petitioner wanted to have argued would have done little to aid petitioner's case.  Petitioner has therefore failed to show that counsel's closing argument was ineffective.

6. <u>Ineffective assistance of appellate counsel</u>.

Finally, petitioner contends that appellate counsel was ineffective for failing to raise a number of his ineffective assistance of trial counsel claims in his appeal.  This Court has determined that none of petitioner's ineffective assistance of trial counsel claims have any merit.  Accordingly, appellate counsel was not ineffective in failing to raise the ineffective assistance of trial counsel claims in petitioner's appeal of right. *See*

11

*Alexander v. Smith,* 342 F. Supp. 2d 677, 685 (E.D. Mich. 2004).

    C.  *Conclusion*

Petitioner was not deprived of the effective assistance of trial or appellate

counsel.

**Claim # 2.  Petitioner was not deprived of a fair trial because of prosecutorial misconduct.**

Petitioner next contends that he was deprived of a fair trial because of

prosecutorial misconduct. [4]

When a petitioner seeking habeas relief makes a claim of prosecutorial

misconduct, the reviewing court must consider that the touchstone of due process is

the fairness of the trial, not the culpability of the prosecutor.  On habeas review, a

court's role is to determine whether the conduct was so egregious as to render the

entire trial fundamentally unfair. *Serra v. Michigan Department of Corrections*, 4 F. 3d

1348, 1355-1356 (6th Cir. 1993).  In evaluating prosecutorial misconduct in a habeas

case, consideration should be given to the degree to which the challenged remarks had

a tendency to mislead the jury and to prejudice the accused, whether they were

isolated or extensive, whether they were deliberately or accidentally placed before the

jury, and, except in the sentencing phase of a capital murder case, the strength of the

competent proof against the accused. *Id.*

Petitioner first claims that the prosecutor improperly presented evidence and

--------

[4]  Respondent claims that portions of petitioner's second claim are procedurally defaulted.  The Court will address the merits of these potentially defaulted claims, rather than discuss any possible procedural bar, for the same reasons that it addressed the merits of petitioner's defaulted claims in Claim # 1.

arguments to the jury that petitioner's parents consulted with, and ultimately retained, an attorney for petitioner. A prosecutor may not imply that an accused's decision to meet with counsel, even shortly after the incident which gives rise to the criminal charges, implies guilt. A prosecutor must also refrain from suggesting to the jury that a defendant hired an attorney to generate an alibi or to get his or her "story straight". *Sizemore v. Fletcher*, 921 F. 2d 667, 671 (6th Cir. 1990). However, this type of prosecutorial misconduct is subject to harmless error analysis. *See Samu v. Elo,* 14 Fed. Appx. 477, 479 (6th Cir. 2001). In light of the overwhelming evidence against petitioner, the prosecutor's questions and comments did not have a substantial and injurious effect or influence on the jury so as to prejudice petitioner.

Petitioner next contends that the prosecutor held a press conference immediately after the preliminary examination, which was covered by several television and radio stations and newspapers. During the press conference, the prosecutor indicated that the police had recovered a shirt from petitioner which they believed was covered with blood. They later learned that the stains in question were from shoe polish. The prosecutor also referred to petitioner as being the leader of a gang called the "Eight Ball Posse." Petitioner claims that the prosecutor's comments during the press conference were inflammatory and prejudicial.

A federal court, even on direct appeal from a criminal conviction in federal court, cannot order a new trial because of media accounts of a prosecutor's pretrial statements that have produced no proven prejudice to the defendant. *See United States v. Dozier,* 672 F. 2d 531, 545 (5th Cir. 1982); *United States v. Stanford,* 589 F. 2d 285, 298 (7th Cir. 1978). As discussed by the Court when

13

addressing petitioner's pretrial publicity claim below, petitioner has failed to show that the jurors who presided over his case were actually biased against him as a result of any pretrial publicity.  Petitioner is therefore not entitled to habeas relief on his related prosecutorial misconduct claim, in the absence of a showing that any jurors were prejudiced by the comments made by the prosecutor at this press conference.

Petitioner next contends that the prosecutor made prejudicial statements in his opening statement which were not supported by any evidence that was introduced at trial.

Not every variance between the advanced description of the prosecutor in the opening statement of the summary of the testimony that he expects to introduce and the actual presentation constitutes reversible error, when a proper limiting instruction is given. *Frazier v. Cupp*, 394 U.S. 731, 736 (1969).  In the present case, the trial court instructed the jurors that the lawyers' arguments, questions, and statements were not evidence. (Tr. VII, pp. 1215-16).  In this case, any variance between the prosecutor's opening statement and the evidence introduced at trial did not prejudice petitioner, in light of the trial court's limiting instruction to the jury. *See United States v. Campbell,* 317 F. 3d 597, 606-07 (6th Cir. 2003).

Petitioner next contends that the prosecutor implied in his closing argument that the stories of Jason Williamson and Eric Mui, who did not testify at trial, would have been consistent with the other witnesses' testimony.  It is improper for a prosecutor during closing arguments to bring to the jury any purported facts which have not been introduced into evidence and which are prejudicial. *Byrd v. Collins*, 209 F. 3d 486, 535 (6th Cir. 2000).  In this case, however, the prosecutor's arguments concerning

14

witnesses who did not testify at trial did not prejudice petitioner, where the jury was instructed that the attorneys' statements were not evidence. *See Campbell,* 317 F. 3d at 606-07.

Petitioner next contends that the prosecutor violated his due process rights by failing to disclose the evidence concerning the gunpowder residue which was found on the victim's trousers, which he claims would exculpated him of the crime.

Suppression by the prosecution of evidence favorable to the defendant upon request violates due process, where the evidence is material to either guilt or punishment of the defendant, irrespective of the good or bad faith of the prosecution. *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

Petitioner's *Brady* claim must fail for the same reason that his related ineffective assistance of counsel claim was rejected.  The standard of prejudice for an ineffective assistance of counsel claim is the same as the materiality requirement for a *Brady* claim. *See Hutchison v. Bell,* 303 F. 3d 720, 749 (6th Cir. 2002).  In addition, allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *Burns v. Lafler,* 328 F. Supp. 2d 711, 724 (E.D. Mich. 2004).  Because petitioner's claim that this gunpowder residue evidence was exculpatory is speculative, he is not entitled to habeas relief on this claim.

Petitioner lastly contends that he is entitled to habeas relief because of the cumulative nature of the prosecutorial misconduct.  Because this Court has found no prosecutorial misconduct as to his individual claims, there can be no cumulative effect of prosecutorial misconduct. *Smith v. Mitchell,* 348 F. 3d 177, 213 (6th Cir. 2003). Petitioner is not entitled to habeas relief on his second claim.

15

**Claim # 3.  Petitioner was not deprived of a fair trial because of pretrial publicity.**

Petitioner next contends that he was deprived of a fair trial because of pretrial publicity.

There are two types of prejudice which can arise in cases where jurors are exposed to pretrial publicity.  Prejudice to a defendant can be presumed in cases where the influence of the news media, either in the community at large, or in the courtroom itself, "pervaded the proceedings." *Murphy v. Florida*, 421 U.S. 794, 798-799(1975)(internal citations omitted).  However, pretrial publicity, even pervasive adverse publicity, does not inevitably lead to an unfair trial. *See De Lisle v. Rivers*, 161 F. 3d 370, 382 (6th Cir. 1998).  The "indicia of impartiality" on the part of a jury is disregarded only in those cases "where the general atmosphere in the community or the courtroom is sufficiently inflammatory." *Id*. at 382 (quoting *Murphy,* 421 U.S. at 802).  The mere prior knowledge of the existence of a case, or familiarity with the issues involved, or even some pre-existing opinion as to the merits of the case, does not in and of itself raise a presumption of a jury taint. *De Lisle,* 161 F. 3d at 382.

A person is not automatically rendered unqualified to serve as a juror merely because he or she has been exposed to media coverage of the charged offense. Instead, the issue becomes whether the exposure to media publicity will preclude the individual from returning a verdict based solely on the person's application of the law as stated to the evidence presented. *Dell,* 194 F. Supp. 2d at 654.

In the present case, petitioner has presented no evidence which showed the type of extensive or inflammatory pretrial publicity that has been condemned by the

16

U.S. Supreme Court.  The U.S. Supreme Court has emphasized the negative effect of pretrial publicity when the publicity amounts to an "out-of-court campaign to convict", reflecting "inflamed public sentiment." *De Lisle*, 161 F. 3d at 385 (quoting *Shepherd v. Florida*, 341 U.S. 50, 52-53 (1951)).  However, coverage that consists of "straight news stories rather than invidious articles which tend to arouse ill will and vindictiveness" are not so troubling. *Id*. at 385 (quoting *Beck v. Washington*, 369 U.S. 541, 556 (1962)). The Court has reviewed the newspaper articles that petitioner has attached to his petition and finds that they are not so numerous or inflammatory so as to render petitioner's trial unfair, particularly where the vast majority of the stories simply provided "bare-bones facts" about petitioner's case. *See Deel v. Jago,* 967 F. 2d 1079, 1087-88 (6th Cir. 1992).

In addition, there is nothing from the record or the habeas petition to indicate that the courthouse in petitioner's trial was "conducted in a circus atmosphere, due in large part to the intrusion of the press." *Murphy*, 421 U.S. at 799 (quoting *Estes v. Texas*, 381 U.S. 532(1965)).  Petitioner has presented no evidence to demonstrate that the general atmosphere in the community or courtroom was "sufficiently inflammatory" for either the Michigan courts or this Court to disregard the jury's "indicia of impartiality." *Murphy*, 421 U.S. at 802.  In this case, there are no allegations made by petitioner that his trial took place under the conditions of "total chaos" that prevailed in cases like *Estes* or *Sheppard.* [5]  A review of those cases leaves no doubt that it was "that chaos which drove those decisions." *DeLisle*, 161 F. 3d at 384 (citing to *Murphy v.*

---

[5] *Sheppard v. Maxwell*, 384 U.S. 333 (1966).

17

*Florida,* 421 U.S. at 799).  Because the record does not indicate that petitioner's trial took part in a "circuslike atmosphere", the Court cannot presume prejudice to petitioner's case merely because the jurors were exposed to pretrial publicity about his case. *Dell,* 194 F. Supp. 2d at 655.

Petitioner has also failed to show actual prejudice to his case from the jurors' exposure to the pretrial publicity.  To demonstrate actual prejudice, a habeas petitioner must show that one or more jurors entertained an opinion before trial that petitioner was guilty and that these jurors could not put this prejudice aside and render a verdict based solely upon the evidence. *Dell,* 194 F. Supp. 2d at 655.  The test for whether pretrial publicity necessitates a change in venue is whether a juror exposed to pretrial publicity can lay aside his or her impression or opinion and render a verdict based upon the evidence presented in court. *Id.*

Petitioner points to the fact that twenty five percent of the potential jurors were excused because they indicated that they could not be fair and impartial.  This is insufficient to establish that the jurors who were ultimately seated were partial or biased. *See Murphy,* 421 U.S. at 803 (fact that 20 of 78 prospective jurors were excused because they indicated an opinion as to the defendant's guilt did not conclusively suggest a community with a sentiment so poisoned against defendant as to impeach the indifference of jurors who displayed no animus of their own).

Petitioner also contends that the trial court judge should have engaged in a much more detailed and individualized *voir dire* of each potential juror concerning the issue of their exposure to pretrial publicity.  The Supreme Court has "stressed the wide discretion granted to the trial court in conducting *voir dire* in the area of pretrial publicity

18

and in other areas of inquiry that might tend to show juror bias." *Mu'Min v. Virginia*, 500 U.S. 415, 427 (1991); *United States v. Koubriti,* 252 F. Supp. 2d 437, 440 (E.D. Mich. 2003).

The Supreme Court in *Mu'Min* held that a state court's refusal to question prospective jurors individually about the specific contents of news reports to which they had been exposed did not violate the defendant's Sixth Amendment right to an impartial jury or his right to due process under the 14th Amendment, holding that individualized and content-based questions were not constitutionally mandated. *Id*. at 417; *see also Richie v. Rogers*, 313 F.3d 948, 961-63 (6th Cir. 2002)(("[T]he majority [in *Mu'Min*] found no error in the trial court's denial of individual voir dire and approved the trial court's refusal to allow prospective jurors to be questioned about specific contents of news reports.").  Therefore, the state trial court's failure to conduct individualized and content-based questions concerning the potential jurors' exposure to pretrial publicity was not contrary to, or an unreasonable application of, clearly established law that would entitle petitioner to habeas relief.

In this case, there is nothing from the record to show that any pretrial publicity tainted the jury pool where none of the jurors that served on petitioner's jury indicated that they had formed an opinion about petitioner's guilt or innocence from the stories that they had read or heard about either from the media or from persons in the community.  A prospective juror's exposure to pretrial publicity does not merit his disqualification, where the juror states unequivocally that he would decide the case on the facts brought out at trial. *McQueen v. Scroggy*, 99 F. 3d 1302, 1319 (6th Cir. 1996). Petitioner has failed to establish actual prejudice on the part of these jurors in light of

19

the fact that all of the jurors seated indicated that they had not formed an opinion about the case from their pretrial exposure to stories about the case and would base their judgment solely upon the evidence introduced in the trial court. *Dell*, 194 F. Supp. 2d at 656.  Petitioner is not entitled to habeas relief on his third claim.

**Claim # 4.  There was sufficient evidence to convict petitioner.**

In his fourth claim, petitioner contends that the evidence was insufficient to convict him of murder and robbery, because Alex Mui's testimony concerning how the shooting took place was contradicted by the physical evidence at the crime scene.

A habeas court reviews claims that the evidence at trial was insufficient for a conviction by asking whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Scott v. Mitchell*, 209 F. 3d 854, 885 (6th Cir. 2000)(citing to *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).  The reviewing court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor has been observed by the finder of fact. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).  The determination of the credibility of a witness is within the sole province of the finder of fact and is not subject to review. *See Dillard v. Prelesnik*, 156 F. Supp. 2d 798, 805 (E.D. Mich. 2001).  In addition, the habeas court does not substitute its judgment for that of the finder of fact. *Id.*

Petitioner claims that the evidence in this case was insufficient to convict him because the credibility of Alex Mui was suspect.  Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the

20

sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002).  An

assessment of the credibility of witnesses is generally beyond the scope of federal

habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F. 3d 265, 286 (6th

Cir. 2000).  The credibility of accomplice testimony is a matter for the jury to decide.

*See Edwards v. People of the State of New York,* 76 S. Ct. 1058, 1062 (1956); *United*

*States v. Echols,* 84 Fed. Appx. 544, 549 (6th Cir. 2003).  Petitioner's contention that

there were inconsistencies between his accomplice's testimony and the crime scene

evidence "[is] merely a challenge to [the witness's] credibility, packaged as an

insufficiency of the evidence claim." *Echols,* 84 Fed. Appx. at 549 (citing *United States*

*v. Talley,* 164 F. 3d 989, 996, (6th Cir. 1999)).


Petitioner ignores the fact that there was abundant evidence in addition to Mui's

testimony that would prove his identity as the perpetrator beyond a reasonable doubt.

Steve Miller and Alex Mui testified about petitioner's earlier discussions about robbing

the Vineland Store and murdering the victim.  Petitioner's fingerprints were found on a

cash drawer that he did not have access to.  A large bag of money was found in the

basement of petitioner's house.  After the robbery, petitioner was in possession of a set

of keys that were similar to the victim's set of keys.  After his arrest, petitioner told

Detective Sergeant William Tucker that he had nothing to worry about because he was

only fifteen years old and "was not going to do no time for this one."   A jury could have

inferred that this was an implied admission of guilt on petitioner's part.  Police also

obtained music lyrics which petitioner had copied, as well as several drawings made by

petitioner, which made reference to killings.  When viewed in a light most favorable to

the prosecution, the evidence was legally sufficient to convict petitioner.

**Claim # 5.  Petitioner is not entitled to habeas relief on his cumulative errors claim.**

Petitioner finally contends that he is entitled to habeas relief because of the cumulative error.

The cumulative weight of alleged constitutional trial errors in a state prosecution does not warrant federal habeas relief; because there is no clearly established federal law permitting or requiring the cumulation of distinct constitutional claims to grant habeas relief. *Moore v. Parker,* 425 F. 3d 250, 256 (6th Cir. 2005).  Therefore, petitioner is therefore not entitled to habeas relief on the grounds of cumulative error. *Id. Alexander,* 342 F. Supp. 2d at 693-94.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484.  A federal district court may grant or deny a certificate

22

of appealability when the court issues a ruling on the habeas petition. *Castro v. United States,* 310 F. 3d 900, 901 (6th Cir. 2002); *Millender,* 187 F. Supp. 2d at 880.

The Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to the claims.

## V. ORDER

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

s/Gerald E. Rosen
Gerald E. Rosen
United States District Judge

Dated:  June 30, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on June 30, 2006, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry
Case Manager

23